Filed 7/25/13  Zhang v. Cheng CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHUMIN ZHANG, Plaintiff and Appellant, v. PAUL P. CHENG et al., Defendants and Respondents. | B241522 (Los Angeles County Super. Ct. No. BC470179) |

APPEAL from an order of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

Shumin Zhang, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

_____

In a prior lawsuit, an employee represented by successive attorneys sued his corporate employer and two managerial employees—a husband and wife—alleging violations of wage and hour laws codified in the Labor Code and other claims. At trial, the employee prevailed on his Labor Code claims against the corporate employer and the husband, who was found to be an alter ego of the corporation. The wife was exonerated on all claims.

The wife then filed the present action against the employee and all of his attorneys, alleging claims for malicious prosecution, abuse of process, and defamation, among others. The attorneys and the employee responded with a special motion to strike, contending the action was a strategic lawsuit against public participation (SLAPP) (Code Civ. Proc., § 425.16; undesignated section references are to that code). The trial court granted the motion. This appeal followed.

We conclude the trial court properly found that all of the wife's causes of action fall within the scope of the anti-SLAPP statute and that she did not demonstrate a reasonable likelihood of prevailing on her claims. We therefore affirm.

# I

# BACKGROUND

The facts and allegations in this appeal are taken from the pleadings, the exhibits submitted in connection with the anti-SLAPP motion, our prior opinion in this case (B238290), and additional papers filed in the trial court regarding various rulings.

## A. Prior Lawsuits

On June 3, 2009, Attorney Paul P. Cheng filed suit on behalf of Jia Nong Guo against Guo's employer, Hong Yei Group, Inc. (*Guo v. Han* (Super. Ct. L.A. County, 2011, No. BC415219)). The corporation operated the Hong Yei Restaurant, where Guo worked. The complaint also named as defendants two managerial employees, Jungfeng Han and Shumin Zhang (husband and wife, respectively), alleging they were alter egos of the corporate defendant. The complaint alleged that defendants had violated wage and hour laws codified in the Labor Code; it also included common law claims and a claim under the "Unfair Competition Law" (Bus. & Prof. Code, §§ 17200–17210).

2

On July 2, 2009, Attorney Cheng filed a similar suit on behalf of another employee, Jian Hui Han, against the same defendants (*Han v. Han* (Super. Ct. L.A. County, 2011, No. BC417128)). The two lawsuits were consolidated.

On or about January 27, 2010, Attorney Cheng substituted out of the case and was replaced by Attorney George L. Young. Bryan Y. Wong is an attorney who works for Young. On or about June 21, 2010, Attorney Young substituted out of the case and was replaced by Attorney Steven L. Sugars. Sugars represented the employees at trial.

Beginning on July 19, 2010, the prior lawsuit was tried to the court, Judge Robert L. Hess presiding. After a seven-day trial, the court found in favor of the employees on their Labor Code claims for the nonpayment of overtime compensation (see Lab. Code, § 1194), the failure to provide meal periods (see *id.*, § 226.7), and the failure to provide accurate wage statements (see *id.*, § 226, subd. (a)). The employees did not prevail on their other claims. On November 9, 2010, the trial court issued a statement of decision. On January 5, 2011, the trial court entered judgment in favor of Jia Nong Guo in the amount of $63,292.13 and in favor of Jian Hui Han in the amount of $53,785.02. The judgment stated that the employees were entitled to an award of costs and reasonable attorney fees. The trial court agreed with the employees that defendant Jungfeng Han (husband) was the alter ego of the corporate defendant and that he was liable for the corporation's debts. The court found that defendant Shumin Zhang (wife) was not an alter ego of the corporation and was therefore not liable on any claim. The judgment incorporated the November 9, 2010 statement of decision.

Zhang filed a memorandum of costs, seeking filing fees and an award of $5,000 in attorney fees on the ground that the claims against her, including the assertion of the alter ego doctrine, were frivolous. The employees filed a motion to tax costs. At a hearing on or about July 7, 2011, the trial court granted the motion. The following colloquy took place between the trial court and Zhang:

"[The Court:] The motion to tax costs is granted. [¶] The costs allowed will be $470 for your filing fees. There is nothing else in this that is properly supported. [¶] In the face of an appropriate objection, I have to strike the costs filed. [¶] . . . [¶]

3

"Ms. Zhang: Can I ask you one more question? Now the case is over I just want to ask you, I am entitled to recover my attorneys fees?

"The Court: I don't think you are, ma'am.

"Ms. Zhang: Why? How can they sue people frivolously and maliciously?

"The Court: It was not frivolous. [¶] You and your husband ran this restaurant. You got up and testified that it was really your husband's business. [¶] You were only an employee. Although there was some doubt about that, they did not persuade me that . . . you should be held liable. That doesn't make it frivolous. [¶] They didn't succeed, but it did not make it completely without merit."

## B. Present Action

On September 26, 2011, Zhang, in propria persona, filed the present action against (1) Jia Nong Guo, the employee who brought one of the prior wage and hour lawsuits (No. BC415219) and (2) all of the attorneys who had represented him at any point in the prior suit (Attorneys Cheng, Young, Wong, and Sugars), and (3) the attorneys' respective law offices (collectively defendants).

The complaint consisted of eight causes of action: malicious prosecution, abuse of process, conspiracy, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, "intentional tort," and violation of the Unfair Competition Law. It also contained a request for punitive damages.

The material portion of the complaint began by quoting four paragraphs from the June 3, 2009 complaint Guo had filed against Zhang. The quoted material alleged Zhang was the alter ego of Hong Yei Group, Inc., and she had violated the Unfair Competition Act and various provisions of the Labor Code in operating the Hong Yei Restaurant. The remaining allegations were based on what allegedly occurred in the prior action, as follows.

Attorney Cheng conspired with Guo in the prior action to obtain a fraudulent waiver of "court fees." An attorney representing Zhang offered to settle the prior action, but Cheng rejected the offer. Zhang filed an answer. Cheng filed a "notice of settlement of entire case" with respect to a "third party" in which he "declared that '[a] request for

4

dismissal will be filed no later than 3/22/10,'" and he thereafter substituted out of the case. Cheng was replaced by Attorney Young, who filed a notice stating that trial would commence on June 30, 2010. Cheng and Young "failed to keep their promises [to] dismiss[] [the] . . . complaint by 3/22/10." Young later substituted out and was replaced by Attorney Sugars, who failed to appear on the date set for trial. As a result, the trial court imposed monetary sanctions on Guo, Sugars, and the Law Offices of Sugars and ordered Zhang's attorney to submit an "'Application for Sanctions, Attorney's fees, and [the] cost of [a] telephonic appearance.'" Zhang's attorney did so. Attorneys Young and Wong filed a trial brief, falsely alleging that Zhang was liable to Guo. Subsequently, Wong and Sugars filed a "Trial Brief on the Issue of Alter Ego Liability," falsely accusing Zhang of "commingling . . . funds in the form of cash, . . . failing to pay taxes, . . . failing to maintain accounting record, and . . . using . . . the corporation as [a] subterfuge for illegal transactions." In the prior action, Guo did not sign the verifications on his responses to Zhang's discovery. Sugars and his client, Guo, filed a frivolous motion for sanctions against Zhang, her husband, her attorney, and Hong Yei Group, Inc. The trial court denied the motion. The court also entered judgment in Zhang's favor.

### 1. Consolidation of Malicious Prosecution Actions

The present case was not Zhang's first action for malicious prosecution. This action was filed on September 26, 2011. Two months earlier, on July 25, 2011, Zhang had filed a malicious prosecution action (No. BC466079) against the same attorneys—Cheng, Young, Wong, and Sugars—based on their representation of employee Han in his prior wage and hour lawsuit. On October 19, 2011, the trial court, Judge Malcolm H. Mackey presiding, ordered the two malicious prosecution actions consolidated.

### 2. Attempts to Disqualify Trial Judge

On October 31, 2011, Zhang filed a peremptory challenge to disqualify Judge Mackey. (See § 170.6.) On November 2, 2011, Judge Mackey denied the challenge as untimely.

On November 7, 2011, Zhang filed a document entitled, "Objection to Judge Malcolm H. Mackey Presiding In All Future Proceedings," and also filed a supporting

5

declaration stating Judge Mackey had made several erroneous rulings in the present case. (See §§ 170.1–170.2.) On November 29, 2011, Zhang filed another "objection" to Judge Mackey supported by a declaration, again complaining about his rulings. Both objections asserted that Judge Mackey was "biased and prejudiced towards plaintiff." On November 29, 2011, Judge Mackey ordered that the "Statement of Disqualification" be stricken.

### 3. Anti-SLAPP Motion

In response to Zhang's complaint, defendants filed an anti-SLAPP motion, contending that all of her claims were based on statements or writings "made before a . . . judicial proceeding . . . [or] in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(1), (2)) and that she was unlikely to prevail on her claims (see *id.*, subd. (b)(1)). In addressing Zhang's likelihood of success, defendants argued that the malicious prosecution claim was meritless because they had probable cause to file the prior wage and hour lawsuit on Guo's behalf. For that proposition, defendants relied on excerpts from the statement of decision in the prior suit and the statements made by Judge Hess at the hearing on defendants' motion to tax costs. With respect to Zhang's other claims, defendants asserted they were barred by the litigation privilege (Civ. Code, § 47, subd. (b)).

In her opposition, Zhang argued (1) the anti-SLAPP motion should have been denied because the hearing date was not within 30 days after the motion was served, (2) defendants had filed the prior lawsuit without probable cause, and (3) the litigation privilege did not apply to defendants' communications.

On March 28, 2012, the trial court, Judge Mackey presiding, heard argument on the anti-SLAPP motion and granted it by minute order of the same date. On May 29, 2012, the court entered a formal order to that effect. Zhang appealed.[1]

---

[1] In an earlier appeal (B238290), Zhang challenged the order granting the anti-SLAPP motion filed by Attorney *Sugars*. On January 28, 2013, we filed an opinion

*(footnote continued on next page)*

6

## II

## DISCUSSION

On appeal, Zhang contends (1) the trial court should have denied the anti-SLAPP motion because it was not set for hearing within 30 days after service, (2) the trial court erred in consolidating this case with the other malicious prosecution action that Zhang had brought against the same attorneys (*Zhang v. Young* (Super. Ct. L.A. County, 2011, No. BC466079), (3) Judge Mackey abused his discretion in denying Zhang's requests to disqualify himself, and (4) the trial court erred in granting the anti-SLAPP motion because Zhang was likely to prevail on her claims at trial.

We conclude that (1) the anti-SLAPP motion was timely set for hearing; (2) Zhang cannot challenge, by way of appeal, the trial court's rulings on disqualification; (3) the trial court did not err in consolidating Zhang's two malicious prosecution actions; (4) all of Zhang's claims fall within the scope of the anti-SLAPP statute; and (5) Zhang is not likely to prevail on any of her claims.

### A.      Timeliness of Hearing Date on Anti-SLAPP Motion

Zhang contends the anti-SLAPP motion should have been denied because the hearing date was not noticed within 30 days after the motion was served.  According to the docket entries on the "Case Summary" for the present action, Cheng filed the anti-SLAPP motion on October 25, 2011, with a hearing date of March 28, 2012.[2]  Thus, the hearing for the anti-SLAPP motion was 155 days after the motion was served.

_____

*(footnote continued from previous page)*

affirming that order.  The present appeal is from the order granting Attorney *Cheng's* anti-SLAPP motion.  Our legal analysis of the anti-SLAPP motion in this appeal is virtually identical to the analysis in our prior opinion.

[2] The complaint was filed on September 26, 2011.  The record does not show when it was served.

Nevertheless, we reject Zhang's contention that the motion had to be noticed for hearing within 30 days of service.

*Former* section 425.16, subdivision (f), stated: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion *shall be noticed for hearing not more than 30 days after service* unless the docket conditions of the court require a later hearing." (Stats. 1999, ch. 960, § 1, italics added.)

On October 5, 2005, the Legislature amended section 425.16, subdivision (f), as an urgency statute effective on that date. (Stats. 2005, ch. 535, §§ 1, 4.) Subdivision (f), as amended, states: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion *shall be **scheduled by the clerk of the court** for a hearing not more than 30 days after the service of the motion **unless the docket conditions of the court require a later hearing**.*" (Italics & boldface added.)

"Thus, the Legislature expressly abrogated the rule on which [Zhang] relies. Section 425.16, subdivision (f), as amended, requires the court clerk to schedule a special motion to strike for a hearing no more than 30 days after the motion is served if such a hearing date is available on the court's docket, but does not require the moving party to ensure that the hearing is so scheduled and does not justify the denial of a special motion to strike solely because the motion was not scheduled for a hearing within 30 days after the motion was served." (*Hall v. Time Warner, Inc*. (2007) 153 Cal.App.4th 1337, 1349.)

**B.      Attempts to Disqualify Trial Judge**

Zhang sought to disqualify Judge Mackey by filing a peremptory challenge (see § 170.6) and by filing two objections based on Judge Mackey's alleged bias and prejudice against her (see § 170.3). Judge Mackey denied the peremptory challenge and the objections.

We cannot review any of these rulings on appeal. The peremptory challenge can be reviewed only by a petition for writ of mandate. (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110.) "Writ review is the exclusive avenue of appellate

8

review for such rulings." (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1348.) The same holds true for Zhang's objections to Judge Mackey. (See § 170.3, subd. (d).)

## C. Consolidation of Zhang's Malicious Prosecution Actions

The trial court consolidated Zhang's two malicious prosecution actions, both of which were based on the prior wage and hour lawsuits against Hong Yei Group, Inc., Hong Yei Restaurant, Zhang, and her husband. More specifically, the trial court ordered that the present case (No. BC470179), filed on September 26, 2011, be consolidated with *Zhang v. Sugars* (Super. Ct. L.A. County, 2011, No. BC466079), filed on July 25, 2011.

We have reviewed Zhang's complaints in both of her malicious prosecution actions, and conclude the material allegations are identical. In the underlying suits—on which Zhang based her malicious prosecution actions—two employees of the Hong Yei Restaurant filed separate lawsuits against Hong Yei Group, Inc., the restaurant, Zhang, and her husband, alleging violations of wage and hour laws codified in the Labor Code. As noted, the employees' suits were consolidated in the trial court, and the employees prevailed against all defendants with the exception of Zhang.

In both malicious prosecution actions, Zhang sued the same attorneys: Cheng, Young, Wong, and Sugars. Those attorneys had represented the employees in the prior wage and hour lawsuits. The two malicious prosecution complaints differed only with respect to the individuals sued. In the present case, Zhang sued Jia Nong Guo, one of the employees who brought a prior wage and hour suit (No. BC415219). In the other case, Zhang did not sue Guo but instead named the other employee, Jian Hui Han, who had filed the other wage and hour suit (No. BC417128); Zhang also named Han's wife, Jun Lian, as a defendant. Both malicious prosecution actions contained the same causes of action.

"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." (§ 1048,

9

subd. (a).) The purpose of consolidation is to promote trial convenience and economy. (*Mueller v. J. C. Penney Co.* (1985) 173 Cal.App.3d 713, 722.) We review the trial court's consolidation order for an abuse of discretion. (See *Estate of Baker* (1982) 131 Cal.App.3d 471, 484–485.)

Here, the two malicious prosecution actions presented the same questions of fact and law, and were brought against the same attorneys. Zhang argues that the trial court erred because it ordered the consolidation after *Sugars's* anti-SLAPP motion in case No. BC466079 had been granted. According to the record, the order of consolidation was filed on October 19, 2011. Although Judge Mackey had granted *Sugars's* anti-SLAPP motion at a hearing on October 12, 2011, a signed appealable order was not filed until November 4, 2011. At the time of consolidation, the trial court had not ruled on *Cheng's* anti-SLAPP motion. As noted, the order granting his anti-SLAPP motion was not filed until May 29, 2012. By consolidating the malicious prosecution actions, the trial court ensured that the rulings on the two anti-SLAPP motions—by Sugars and Cheng, respectively—would be consistent. And it is well established that one of the purposes of consolidation is to avoid inconsistent or conflicting rulings. (See Rylaarsdam et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 12:340, p. 12(I)-63.)

## D.    Anti-SLAPP Law

"'The Legislature enacted the anti-SLAPP statute to protect defendants . . . from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.'" (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1052.)

The statute provides that "[a] cause of action against a person *arising from any act* of that person *in furtherance of* the person's right of petition or *free speech* under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

10

(§ 425.16, subd. (b)(1), italics added.) The statute is to "be broadly construed to encourage continued participation in free speech and petition activities." (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22; accord, § 425.16, subd. (a).)

"[T]he statutory phrase 'cause of action . . . *arising from*' means simply that the *defendant's act* underlying the plaintiff's cause of action must *itself* have been *an act in furtherance of the right of petition or free speech. . . .* In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. . . . 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, some italics added, citations omitted; accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734 ["'arising from'" encompasses any act "based on" speech or petitioning activity]; *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [same]; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 72 [same].)

Section 425.16, subdivision (e) states: "As used in [the anti-SLAPP statute,] '*act in furtherance of* a person's *right of petition* or free speech under the United States or California Constitution in connection with a public issue' includes: (1) *any written or oral statement or writing made before a* legislative, executive, or *judicial proceeding*, or any other official proceeding authorized by law, (2) *any written or oral statement or writing* made in connection with *an issue under consideration or review by a* legislative, executive, or *judicial body*, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118, 1123.)

11

"Clauses (3) and (4) of section 425.16, subdivision (e), concerning statements made in public fora and 'other conduct' implicating speech or petition rights, include an express 'issue of public interest' limitation; clauses (1) and (2), concerning statements made before or in connection with issues under review by official proceedings, contain no such limitation." (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1117.) Thus, if a communication falls within either of the "official proceeding" clauses, the anti-SLAPP statute applies without a separate showing that a public issue or an issue of public interest is present. (See *Briggs*, at pp. 1117–1121, 1123; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 196.) In drafting the statute, the Legislature concluded that authorized official proceedings necessarily involve a public issue or an issue of public interest. (*Briggs*, at p. 1118.)

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights."' . . . 'Considering the purpose of the [anti-SLAPP] provision, . . . the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights.'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92–93, citation omitted.)

In ruling on an anti-SLAPP motion, a trial court "engage[s] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these

12

determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "The term 'probability [of prevailing]' is synonymous with 'reasonable probability.'" (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 238.)

"The party making a special motion to strike must make a prima facie showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity. . . . Once the defendant makes a prima facie showing, 'the burden shifts to the plaintiff to . . . "make a prima facie showing of *facts* which would, if proved at trial, support a judgment in plaintiff's favor."'" (*Rezec v. Sony Pictures Entertainment, Inc.* (2004) 116 Cal.App.4th 135, 139, citations omitted; accord, *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315–316; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108.)

"In order to establish a probability of prevailing on the claim . . . , a plaintiff responding to an anti-SLAPP motion must '"state[ ] and substantiate[ ] a legally sufficient claim."' . . . Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, citation omitted.)

An attorney who has made statements or writings on behalf of his or her client in connection with litigation is entitled to the protection of the anti-SLAPP statute to the same extent as the client. (See *Simpson Strong-Tie Company, Inc. v. Gore* (2010) 49 Cal.4th 12 [affirming judgment granting anti-SLAPP motion brought by attorney]; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 485–489; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 629; *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220–221; Rylaarsdam et al., Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 7:601, p. 7(II)-11.)

Our review of an order granting an anti-SLAPP motion is de novo. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

13

### E. Protected Activity and Likelihood of Prevailing

For purposes of determining whether Zhang's claims are based on activity protected by the anti-SLAPP statute and whether she is likely to prevail at trial, we first examine the malicious prosecution claim and then turn our attention to the other claims.

#### 1. Malicious Prosecution

Zhang's claim for malicious prosecution is based on defendants' filing and pursuit of civil litigation, that is, the prior wage and hour lawsuits. Her malicious prosecution claim, by its very nature, falls within the scope of the anti-SLAPP statute. (See *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th 728, 736–741 & fn. 6; *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115.)

Thus, Zhang has the burden—in the words of the statute—"[to] establish[ ] that there is a probability that [she] will prevail on [her] claim." (§ 425.16, subd. (b)(1).) "The plaintiff's showing of facts must consist of evidence that would be admissible at trial. . . . The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment. . . . If the plaintiff presents a sufficient prima facie showing of facts, the moving defendant can defeat the plaintiff's evidentiary showing only if the defendant's evidence establishes as a matter of law that the plaintiff cannot prevail." (*Hall v. Time Warner, Inc.*, *supra*, 153 Cal.App.4th at p. 1346, citations omitted.) "[T]he court's responsibility is to accept as true the evidence favorable to the plaintiff." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

To prevail on her cause of action for malicious prosecution, Zhang must prove she was previously sued on a claim brought without probable cause, initiated with malice, and pursued to a termination in her favor. (See *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 318.) There is no dispute here that the prior action terminated in her favor.

"Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed. '[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the

14

frivolousness of an appeal . . . , i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." . . . This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." . . . Attorneys and litigants . . . "'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .'" . . . Only those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit.'" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047–1048, citations omitted; accord, *Wilson v. Parker, Covert & Chidester*, *supra*, 28 Cal.4th at p. 822.) "Malicious prosecution . . . includes continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.)

"'Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must *separately* show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit — that is, those which lack probable cause — are the least meritorious of all meritless suits. Only this subgroup of meritless suits present[s] no probable cause.'" (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 743, fn. 13.)

In asserting they had probable cause to file the prior action against Zhang, defendants point out they succeeded in establishing that her husband was an alter ego of the corporation and therefore liable under the judgment. Defendants also relied on the statement of decision in the prior wage and hour lawsuits. As Judge Hess found: "Ms. Zhang testified she was one of the managers of [the] Hong Yei [Restaurant], and received salary checks twice a month. She stated she began work at the restaurant on June 24, 2007[, the day it opened for business]. Her duties may be summarized as partially waitress, partially cashier, partially bookkeeper, and partially on-site manager. Ms. Zhang was responsible for signing checks to pay for the routine bills, including

checks for wages, and she delivered those pay checks to the employees. Ms. Zhang testified [that her husband] bought the food, which he paid for by credit card or checks she had signed. . . . [¶] . . . [¶]

"With respect to the alter ego issue, . . . [¶] . . . the evidence was not sufficient to persuade the Court that Ms. Zhang was . . . the alter ego of [the corporation]. While she had *significant responsibilities* for the operation of the restaurant, the evidence did not show that she had or claimed an ownership interest, or that she had a position as an officer or director of [the corporation]." (Italics added.)

And defendants emphasize that, in the prior wage and hour suits, when Judge Hess granted their motion to deny Zhang's request for attorney fees, he said their claims against her were "not frivolous" and "not . . . completely without merit." As Judge Hess explained, directing his comments to Zhang: "You and your husband ran this restaurant. You got up and testified that it was really your husband's business. [¶] You were only an employee. Although there was some doubt about that, they did not persuade me that . . . you should be held liable. That doesn't make it frivolous. [¶] They didn't succeed, but it did not make it completely without merit."

Nevertheless, as previously stated, under the anti-SLAPP statute, a malicious prosecution claim, by definition, is based on protected activity. Defendants' evidence on the issue of probable cause is considered only if Zhang first satisfies her burden of demonstrating she is likely to prevail on the claim.

In her appellate brief, Zhang cites the record with respect to only two assertions regarding the merits of her claims. First, she says, "[i]n the instant case, as the facts and evidence show[ ] (**p. 4**/10-26; **p. 5**/1-9), the trial court erred in granting [defendants'] special motion[ ] to strike the complaint when [they] failed to present facts and evidence supporting their allegations (Exhibits **14, 15, 16**)." (Boldface added.) Second, she asserts that, "as shown by Exhibits **14, 15, and 16**[, defendants], and each of them, were engaged in extortion. Thus, the trial court erred in granting [defendants'] meritless and untimely

16

motion[ ] to strike because the statutes did not apply to [defendants'] evil motive." (Boldface added.)[3]

We conclude Zhang did not """"make a prima facie showing of *facts* which would, if proved at trial, support a judgment in [her] favor."""" (*Rezec v. Sony Pictures Entertainment, Inc.*, *supra*, 116 Cal.App.4th at p. 139.)  Although Zhang provided citations to the record—either by page or exhibit number—she did not explain the relevance of the evidence in an adequately developed argument.  (See *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700.)  "We will not develop the appellant['s] arguments for [her]." (*Schoendorf v. U.D. Registry, Inc*. (2002) 97 Cal.App.4th 227, 237–238.) Further, Zhang's assertions are nothing more than legal conclusions.  But to defeat defendants' anti-SLAPP motion, Zhang had to make a "showing of *facts* . . . that would be . . . sufficient to support a judgment in the plaintiff's favor as a matter of law." (*Hall v. Time Warner, Inc.*, *supra*, 153 Cal.App.4th at p. 1346, italics added.)

In sum, Zhang failed to establish a reasonable likelihood she would prevail on her malicious prosecution claim.  We therefore do not consider any evidence submitted by defendants on that point.  The trial court properly granted the anti-SLAPP motion as to the malicious prosecution claim.

## 2. Remaining Claims

Although a malicious prosecution claim is, by definition, based on activity protected by the anti-SLAPP statute, defendants must make an affirmative showing that Zhang's other claims—abuse of process, conspiracy, defamation, intentional infliction of

---

[3] Pages 4 and 5 of the record are portions of Zhang's complaint in the present action which, in turn, quote the allegations made against her in Guo's prior suit alleging wage and hour violations.  Exhibit 14 is Guo's responses to Zhang's document demand in the prior suit; exhibit 15 is Zhang's objections to Judge Hess's statement of decision in the prior suit; and exhibit 16 is the papers filed by Zhang's husband in the prior suit, requesting a new trial.

emotional distress, negligent infliction of emotional distress, "intentional tort," and violation of the Unfair Competition Law—are based on statements or writings protected by the statute.

We conclude defendants satisfied that requirement. We have already described the allegations in Zhang's complaint. (See pt. I.B., *ante*.) Her remaining claims are based on statements or writings "made [by defendants] before a . . . judicial proceeding . . . [or] in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(1), (2).) In short, Zhang's claims are based on communications made by defendants in the prior wage and hour lawsuits or in connection with them.

Consequently, the burden shifts to Zhang to show she is likely to prevail on her remaining claims. She has failed in that respect because the claims are barred by the litigation privilege.

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) "Because the privilege applies without regard to malice or evil motives, it has been characterized as 'absolute.'" . . .

"The principal purpose of [the litigation privilege] is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. . . . [¶] . . . [¶]

"[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at pp. 213–214, citations omitted.) "'In other words, the litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the

18

fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation.'" (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 262.)

"In furtherance of the public policy purposes it is designed to serve, the privilege . . . has been given broad application.  Although originally enacted with reference to defamation . . . , the privilege is now held applicable to any communication, whether or not it amounts to a publication . . . , and all torts except malicious prosecution. . . . Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. . . ." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at pp. 211–212, citations omitted.)

We acknowledge that in comparing the anti-SLAPP statute with the litigation privilege, our Supreme Court has stated, "[T]he two statutes are not substantively the same" and they do not "serve the same purposes."  (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 323–324.)  Yet, in many cases, a defendant's communications will fall within the scope of the anti-SLAPP statute and will also be protected by the litigation privilege. (See, e.g., *Flatley*, at p. 323 ["The litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."]; *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1520–1522; *Alpha & Omega Development, LP v. Whillock Contracting, Inc*. (2011) 200 Cal.App.4th 656, 663–667; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781–785; Rylaarsdam et al., Cal. Practice Guide:  Civil Procedure Before Trial, *supra*, ¶¶ 7:630 to 7:631, 7:1015, pp. 7(II)-15 to 7(II)-16, 7(II)-54.)

Zhang's remaining claims are based on communications made by defendants in a prior judicial proceeding; defendants were participants in that proceeding; the communications were made to establish Zhang's liability; and the communications had some connection or logical relation to the action.  (See *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.)  The litigation privilege therefore applies and precludes liability as

to all of defendants' alleged communications.  (See Rylaarsdam et al., Cal. Practice Guide:  Civil Procedure Before Trial, *supra*, ¶¶ 1:604 to 1:634, pp. 1-134 to 1-149.) Zhang's remaining claims are therefore barred by the litigation privilege.

Finally, even if the litigation privilege does not bar the remaining claims, Zhang has failed to demonstrate a likelihood of prevailing on any of them for the same reason she failed in that respect on the malicious prosecution claim:  In her appellate brief, Zhang merely asserted two legal conclusions:  (1) "the facts and evidence show[ ] (p. 4/10-26; p. 5/1-9), the trial court erred in granting [defendants'] special motion[ ] to strike the complaint"; and (2) "as shown by Exhibits 14, 15, and 16[, defendants], and each of them, were engaged in extortion."  (See pt. II.E.1, *ante*.)  These conclusory statements are insufficient to "'''make a prima facie showing of *facts* which would, if proved at trial, support a judgment in [her] favor [on any of her claims]."''"  (*Rezec v. Sony Pictures Entertainment, Inc.*, *supra*, 116 Cal.App.4th at p. 139, italics added in *Rezec*.)

Accordingly, the remaining claims are without merit because the litigation privilege bars liability based on defendants' communications, and Zhang failed to cite and analyze evidence that established a reasonable likelihood she would prevail at trial. It follows that the trial court properly granted the anti-SLAPP motion as to Zhang's remaining claims as well as the malicious prosecution claim.

## III

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.